UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WESLEY WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>PILKERTEN, et al.,<br><br>Defendants. | No. 1:19-cv-00151-DAD-SAB (PC)<br><br>ORDER DECLINING TO ADOPT FINDINGS AND RECOMMENDATIONS AND GRANTING PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*<br><br>(Doc. No. 4) |

Plaintiff John Wesley Williams is a state prisoner proceeding *pro se* in this civil rights action brought pursuant to 28 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On February 8, 2019, the assigned magistrate judge issued findings and recommendations, recommending that plaintiff's application to proceed *in forma pauperis* be denied and that plaintiff be required to pay the $400.00 filing fee to proceed with this action because he is subject to the three strikes bar under 28 U.S.C. § 1915(g) and the allegations of his complaint do not satisfy the "imminent danger of serious physical injury" exception to that bar. (Doc. No. 4.) Those findings and recommendations were served on plaintiff and contained notice that any objections thereto were to be filed within twenty-one (21) days after service. (*Id.* at 4.) On March 11, 2019, plaintiff untimely filed his objections. (Doc. No. 5.)

1

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), the undersigned has conducted a *de novo* review of the case. Having carefully reviewed the entire file, including plaintiff's objections, the undersigned will decline to adopt the findings and recommendations based upon the additional information and explanation provided in his objections.

The undersigned has reviewed the dismissals of four lawsuits that plaintiff previously filed while incarcerated that the magistrate judge here has construed as strikes and agrees that plaintiff is subject to § 1915(g)'s three strikes bar.[1] Plaintiff does not disagree that he is subject to

---

[1] The undersigned agrees that the four prior dismissal orders relied upon by the magistrate judge here qualify as strikes. *See Williams v. Narramore*, No. 2:03-cv-01972-UA-AJW (C.D. Cal. July 17, 2003) (dismissing action due to plaintiff's failure to state a cognizable claim); *Williams v. Malfi*, No. 2:08-cv-01737-WBS-CMK (E.D. Cal. July 29, 2010) (same); *Williams v. Hubbard*, 2:10-cv-01717-UA-FFM (C.D. Cal. July 6, 2010) (same). The fourth order relied upon as a strike—*Williams v. Harrington*, 1:09-cv-01823-GSA (E.D. Cal. May 25, 2012)—was issued by a magistrate judge following only the consent of the plaintiff to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). Subsequent to that dismissal order, the Ninth Circuit issued its opinion in *Williams v. King*, 875 F.3d 500, 504–05 (9th Cir. 2017), in which the court held that absent the consent of all parties, including unserved defendants, magistrate judges lack jurisdiction to enter dispositive decisions including orders of dismissal. The decision in *Williams* raises an issue not yet addressed by the Ninth Circuit: May dismissal orders issued prior to the decision in *Williams* by magistrate judges without the consent of all parties later be counted as strikes under § 1915(g) if they otherwise qualify as such under that statute? The undersigned has been persuaded that, where a magistrate judge issued a pre-*Williams* order dismissing a case with only the plaintiff's consent to jurisdiction, the dismissal can still count as a "strike," so long as the order has not been declared void by way of an appeal or other appropriate challenge. *See Bontemps v. Hicks*, No. 1:16-cv-01854-DAD-EPG, 2018 WL 1905648, at *2–4 (E.D. Cal. Apr. 23, 2018), *findings and recommendations adopted by* 2018 WL 5291963 (E.D. Cal. Oct. 23, 2018). While the undersigned remains persuaded that such a conclusion is correct as a matter of law, the court also acknowledges that the issue has not been addressed by the Ninth Circuit or any other circuit, and that a reasonable argument can be made to the contrary. *See Allen v. Meyer*, 755 F.3d 866, 868 (9th Cir. 2014) (Absent consent, "the magistrate judge had no jurisdiction to enter final judgment on behalf of the district court, and any purported judgment is a nullity."); *Kofoed v. Int'l Bhd. of Elec. Workers, Local 48*, 237 F.3d 1001, 1004 (9th Cir. 2001) ("Where the magistrate judge has not received the full consent of the parties, he has no authority to enter judgment in the case, and any purported judgment is a nullity."); *Reynaga v. Cammisa*, 971 F.2d 414, 417 (9th Cir. 1992) (Holding that, absent consent of the parties, an order staying an action issued by a magistrate judge "was beyond the magistrate's authority: it was beyond his jurisdiction and was, in essence, a legal nullity"); *see also Orff v. United States,* 358 F.3d 1137, 1149–1150 (9th Cir. 2004) (Because "the district court never had jurisdiction to issue its rulings on the merits . . . [w]e must vacate as nullities [those] rulings" and they are therefore not "binding in this or any other case."); *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380-81 (9th Cir. 1988) ("If jurisdiction was lacking, then the court's various orders . . . were nullities.").

the bar, instead he argues that he was under imminent danger of serious physical injury when he filed this action and is therefore excepted from that bar. (Doc. No. 5 at 3–4.) For the reasons that follow, the undersigned agrees.

In his complaint, plaintiff alleges as follows. He "is a participant in the California Department of Corrections and Rehabilitation (CDCR) Mental Health Services Delivery System (MHSDS) at the Enhanced Outpatient (EOP) level of care." (Doc. No. 1 at 4.) EOP is a "special program for prisoners who are gravely mentally disable[d] [and] unable to care for themselves in the general population." (*Id.*) Plaintiff "is recognized as[] and is being treated in EOP in part[] for what is commonly referred to as a cutter." (*Id.*) He "does not typically cut in [a] suicide attempt, but rather to relieve stress, anxiety, anger, depression, f[r]ustration, etc." (*Id.*) Plaintiff "is prescribed regular psychotropic medications at 8:00 a.m. and 4:00 p.m., as well as a separate as needed prescription which plaintiff may request every 4–6 hours to calm down and deter [the] urge to cut." (*Id.*)

According to plaintiff's complaint, on or about October 11, 2018, he gave defendant correctional officer Castro "a CDCR Form-22 in [an] attempt to resolve a mail dispute, as legal mail plaintiff had given to defendant two weeks or so prior[] had not been delivered." (*Id.* at 5.) After reading the form, defendant Castro threw it the trash, while defendant correctional officer Mirda "stood by laughing." (*Id.*) Plaintiff informed both defendants Castro and Mirda that he intended to file a 602 grievance about this incident and, in response, defendant Castro threatened to issue him a rules violation report. (*Id.*) Plaintiff alleges that this caused him anxiety, that he thereafter informed a prison psychiatric technician that he had an urge to hurt himself, and that he eventually did cut his left wrist to "reliev[e] [the] anxiety brought on by the issuance of a[] [rules violation report] solely [due to] plaintiff engag[ing] in [] protected conduct." (*Id.*) Plaintiff's complaint contains additional allegations of defendant correctional officers—who plaintiff alleges are aware of his urges to harm himself—engaging in behaviors that caused him to seriously physically harm himself, including: on December 20, 2018, defendants Castro, Mirda, and Serna "refused to open plaintiff's cell door for [his] 4:00 p.m.[] medications [and] then refused to open plaintiff's cell door for [his] dinner meal"; at 8:00 p.m. on what appears to be the same day,

3

defendants Castro, Mirda, and Serna "again refused to open plaintiff's cell door for medications, as needed, and to process outgoing legal mail"; and at around 9:00 p.m. on what appears to be the same day, defendant Castro informed plaintiff that he was not getting access to medication and his legal mail was not being processed "because [plaintiff] 602ed [defendant Castro]" and that if plaintiff "drop[ped] that" he could have his food and his medications, but that if he did not drop his 602 grievance, defendant Castro would "find a reason to [pepper] spray [plaintiff's] ass when [he] comes out." (*Id.* at 6–7.) Plaintiff alleges that he cut himself to cope with this encounter as well. (*Id.* at 8.) On December 21 and 22, 2018, defendant correctional officer Hicks told him, "my sergeant said what [you're] doing is bitchin and snitchin[,] so [you're] gonna go back to your cage, and if you don't stop with the complaints[,] I'm gonna direct an officer to fuck you up [and] then charge you with assault to move you off the yard. Do you understand[?]" (*Id.* at 9.) Defendant Hicks then took plaintiff's CDCR Form-22 and "tore it up in front of plaintiff," while defendant correctional officer Villarrial stood behind defendant Hicks and mockingly stated, "I'm suicidal" for "over 20-25 minutes." (*Id.*) Plaintiff alleges that he cut himself to cope after this incident, too. (*Id.*)

In finding that plaintiff did not satisfy § 1915(g)'s imminent danger exception, the magistrate judge observed that the complaint "does not set forth sufficient factual allegations to demonstrate a *present* threat of serious physical injury." (Doc. No. 4 at 3) (emphasis added). Specifically, the magistrate judge found that, because the allegations described above involved events allegedly occurring while plaintiff was housed at California State Prison, Corcoran ("Corcoran") and because plaintiff was housed at Richard J. Donovan Correctional Facility ("RJD") as of the date of the filing of his complaint, plaintiff was not "under imminent danger of serious physical injury at the time [that] he filed the instant action." (*Id.*) In his objections to the pending findings and recommendations, however, plaintiff clarifies that although he was at RJD when his complaint was received by this court on February 4, 2019, he actually delivered his complaint to Corcoran library staff for filing with this court in December 2018, while still housed at Corcoran and subjected to the conditions he described in that complaint. (Doc. No. 5 at 2.) Specifically, plaintiff asserts that he was transferred to RJD in December 2018 and that Corcoran

4

library staff forwarded his complaint to RJD's librarian, directing plaintiff to e-file his complaint with this court from RJD. (*Id.*) However, according to plaintiff, prisoners at RJD can only file civil rights complaints with the U.S. District Court for the Southern District of California. (*Id.*) Upon learning this, plaintiff thereafter mailed his complaint to this court in January 2019. (*Id.*) On February 5, 2019, plaintiff was transferred back to Corcoran. (*Id.*) Plaintiff argues that applying the mailbox rule, this action was filed in December 2018, when he originally gave his complaint to Corcoran staff to file with this court. (*Id.*) Plaintiff argues that in addition to these circumstances establishing that he was in imminent danger at the time his complaint was filed, because he is now back at Corcoran and "the deprivations . . . claimed in this action continue and are ongoing" and because "denying [him] access to medications prescribed to deter [his] urge to cut create[s] imminent danger[,] the . . . findings and recommendations are contrary to law." (*Id.* at 4.) The court finds plaintiff's explanation of the circumstances not known by the magistrate judge at the time the findings and recommendations were issued and his arguments to be persuasive.

Under the mailbox rule, a prisoner files his § 1983 complaint "at the time [he] deliver[s] it to the prison authorities for forwarding to the court clerk." *Douglas v. Noelle*, 567 F.3d 1103, 1106 (9th Cir. 2009) (quoting *Houston v. Lack*, 487 U.S. 266, 276 (1988)). Here, plaintiff contends that he delivered his complaint to Corcoran prison authorities to forward to the Clerk of the Court in December 2018. (Doc. No. 5 at 2.) Indeed, plaintiff's proof of service by mail form for his complaint indicates that he delivered his complaint to Corcoran prison authorities on December 21, 2018. (*See* Doc. No. 1 at 11.) Plaintiff's subsequent transfer to RJD was not within his control, nor did he have any control over his complaint after he delivered it to Corcoran prison authorities for filing. The undersigned therefore concludes that plaintiff filed his complaint in this action on December 21, 2018.

Next, the undersigned finds that the allegations in plaintiff's complaint—which describe several incidents that occurred in October and December of 2018—sufficient to state an imminent danger of serious physical injury at the time that he filed his complaint, thereby excepting him from 28 U.S.C. § 1915(g)'s three strikes bar. "Prisoners qualify for the exception based on the

alleged conditions at the time the complaint was filed," and "the exception applies if the danger existed at the time the prisoner filed the complaint." *Andrews v. Cervantes*, 493 F.3d 1047, 1052–53 (9th Cir. 2007). Moreover, because plaintiff is *pro se*, this court "must liberally construe his allegations." *Id.* at 1055. Finally, "§ 1915(g) concerns only a threshold procedural question—whether the filing fee must be paid upfront or later. Separate PLRA provisions are directed at screening out meritless suits early on." *Id.* Thus, "the exception applies if the complaint makes a plausible allegation that the prisoner faced 'imminent danger of serious physical injury' at the time of filing," and "a prisoner who alleges that prison officials continue with a practice that has injured him or others similarly situated in the past will satisfy the 'ongoing danger' standard and meet the imminence prong of the three-strikes exception." *Id.* 1055–57.

Here, the court concludes that the allegations of the complaint are sufficient with respect to the imminent danger of harm plaintiff faced at the time that he delivered his complaint to prison authorities for filing. As noted, plaintiff alleges that correctional officers—despite knowing that he has a tendency to harm himself and requires medication to alleviate such urges—deprived him of his medications, mocked his desire to harm himself, threatened him with retaliatory action, and suggested that he could have access to food and his medications if he withdrew his inmate grievance against them. Moreover, plaintiff alleged that he did in fact cut himself in coping with these incidents. These allegations plausibly allege that plaintiff faced an imminent danger of serious physical injury at the time that he filed his complaint. *See Pauline v. Mishner*, No. CIV 09-00182 JMS/KSC, 2009 WL 1505672, at *2 (D. Haw. May 28, 2009) (recognizing that, when properly alleged, a suicidal prisoner could establish imminent danger of serious physical injury from his own suicidal impulses); *see also Walker v. Mohadjer*, No. 2:13-CV-01193-WBS-AC, 2015 WL 627862, at *3 (E.D. Cal. Feb. 11, 2015), *report and recommendation adopted,* No. 2:13-CV-1193 WBS AC, 2015 WL 1137134 (E.D. Cal. Mar. 12,

/////

/////

/////

2015) (finding plaintiff plausibly alleged that he was in imminent danger of harm due to defendants' failure to treat his PTSD which resulted in suicide attempts).[2]

Accordingly,

1. The court declines to adopt the findings and recommendations issued on February 8, 2019 (Doc. No. 4);
2. Plaintiff's motion to proceed *in forma pauperis* (Doc. No. 2) is granted; and
3. This action is referred back to the assigned magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: **May 13, 2019**

UNITED STATES DISTRICT JUDGE

---

[2] Nonetheless, it has been recognized that a district court may discredit "factual claims of imminent danger that are 'clearly baseless,' i.e., allegations that are fantastic or delusional and rise to the level of the 'irrational or wholly incredible.'" *Gibbs v. Cross*, 160 F.3d 962, 967 (3d Cir. 1998) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)); *see also Gorbey v. Waters*, 2017 WL 44867, *1 (W.D. Va. Jan. 3, 2017) ("Plaintiff's complaint against the defendants concerns the alleged deprivation of a religious meal and the retaliation he suffered from complaining afterward. Plaintiff's repeated reliance on the phrase 'imminent danger' is an invocation of a label and conclusion that is not entitled to an assumption of truth.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).