UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WESLEY WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PILKERTEN, et.al.,<br><br>　　　　　Defendants. | Case No.: 1:19-cv-00151-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS<br><br>[ECF No. 26] |

　　　　Plaintiff John Wesley Williams is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983, filed on February 4, 2019.

　　　　Currently before the Court is Defendants' motion to dismiss, filed January 23, 2020.

**I.**

**RELEVANT HISTORY**

　　　　This action is proceeding against Defendants Castro, Merida,[1] Serna, Fernandez, Hicks, and Villarrial for retaliation under the First Amendment and deliberate indifference under the Eighth Amendment.

///

---

[1] Plaintiff incorrectly identified Defendant Merida as "Mirda." The Court will therefore direct the Clerk of Court to correct the spelling of this Defendant.

1

On December 2, 2019, Defendants filed a request for an extension of time to file a response to the complaint, which was granted on December 3, 2019.  (ECF Nos. 23, 24.)

As previously stated, on January 23, 2020, Defendants filed the instant motion to dismiss, along with a request for judicial notice.  (ECF Nos. 26, 27.)  Plaintiff filed an opposition on March 11, 2020, and Defendants file a timely reply on April 1, 2020.  (ECF Nos. 33, 36.)  Accordingly, Defendants' motion to dismiss is submitted for review without oral argument.  Local Rule 230(l).

## II.

## DISCUSSION

### A.   Legal Standard

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).

Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

///

**B.     Summary of Plaintiff's Complaint**

Plaintiff is a participant in the California Department of Corrections and Rehabilitation (CDCR) Mental Health Services Delivery System (MHSDS) at the Enhanced Outpatient (EOP) level of care.

Plaintiff suffers from "what is commonly referred to as a cutter." Plaintiff does not typically cut in suicide attempt, but rather to relieve stress, anxiety, anger, depression, frustration, etc. Plaintiff is prescribed regular psychotropic medication daily at 8:00 a.m. and 4:00 p.m., and as needed every four to six hours.

On or about October 11, 2018, Plaintiff gave Defendant Castro a CDCR Form-22 request in an attempt to resolve a mail dispute, as legal mail Plaintiff provided to him two weeks prior had not been delivered. Defendant Castro read the CDCR Form-22, refused to adhere to CDCR policy by issuing Plaintiff's receipt and/or response, then went to his office to discard the request in the trash, while Defendant Merida stood by laughing.

When Plaintiff informed Defendants Castro and Merida of his intent to file an inmate grievance, Castro threatened retaliation by stating, "Your getting a 115 for this," which caused Plaintiff immediate anxiety. Plaintiff reported to Psychiatric Technician (PT) Uriate the urge to hurt himself or others based on the conduct by Defendant Castro. PT Uriate altered Defendant to Plaintiff's report some time later, however, Plaintiff had already cut his left wrist to relieve the anxiety.

In November 2018, Defendant Castro issued a rules violation report charging Plaintiff with delaying a peace officer while in the performance of duties. A correctional officer was assigned as an investigative employee to act as a fact finder for the Senior Hearing Officer (SHO). Plaintiff was found "not guilty" of the rules violation and it was dismissed. However, in December 2018, when Defendant Fernandez was assigned Plaintiff's grievance regarding Castro's conduct, Fernandez refused to rely on the factfinding evidence from the rules violation report to properly train, supervise and discipline Castro and Merida.

As a direct result, on December 20, 2018, Defendants Castro, Merida and Serna refused to open Plaintiff's cell door for his 4:00 p.m. medication, and then refused to open the door for dinner.

1  At 8:00 p.m., Defendants Castro, Merida and Serna again refused to open Plaintiff's cell door for
2  medication, as needed by Plaintiff and to process outgoing legal mail.  When Plaintiff yelled out his
3  cell, Serna yelled back the tower stating, "they said you got nothing coming" which inflamed
4  Plaintiff's already agitated state of mind.  Defendant Serna then yelled to "talk to Castro" when he
5  does the 9:00-9:30 p.m. count.  When Castro was conducting the count, Plaintiff asked why he was not
6  provided his psychotropic medication and why he would not take his legal mail.  Castro stated,
7  "because you 602ed me, you drop that and you have your food and your psyc pills."  Plaintiff stated
8  that he would not drop the appeal, and Castro responded, "If you don't I'm gonna find a reason to
9  spray your ass when you come out."  Plaintiff panicked and was in fear because for several months
10 Defendant Castro, was allowed by Defendants Pilkerten and Fernandez to (1) pepper spray a series of
11 EOP prisoners and beat sever in the head with a baton; (2) target EOP prisoner who borrow, trade, or
12 sell in commissary; and (3) approach and talk to EOP prisoners, including Plaintiff, in menacing,
13 vulgar, and degrading tone, in direct response to the use of the inmate appeal process.
14          Plaintiff did not leave his cell whenever Defendant Castro was working.
15          On or about December 21 and 22, 2018, Defendant Castro was off work so Plaintiff reported
16 suicidal trend to a PT and was placed in a holding case to be evaluated by MHSDS psychologist Dr.
17 D.  Plaintiff informed Dr. D about the incidents involving Defendant Castro, but Defendant Hicks
18 intervened to defend Castro and told Dr. D that he would accept Plaintiff's CDCR Form-11 and
19 assured it would be delivered to Defendant Lieutenant Pilkerten.
20          Dr. D discharged Plaintiff back to his cell with the belief that Defendant Pilkerten would
21 receive Plaintiff's CDCR Form-22.  However, Defendant Hicks told Plaintiff, "my sergeant said what
22 your doing is bitcin and snitcin so your gonna go back to your cage and if you don't stop with
23 complaints I'm gonna direct an officer to fuck you up then charge you with assault to move you off
24 the yard. Do you understand," to which Plaintiff responded "yes."  Defendant Villarrial stood behind
25 Defendant Hicks repeatedly mocking Plaintiff stating "I'm suicidal" for about twenty to twenty-five
26 minutes.  Plaintiff was escorted back to his cell where he resumed to cut to cope.
27 ///
28 ///

**C.     Request for Judicial Notice**

Defendants request the Court take judicial notice of Plaintiff's objections to the Findings and Recommendations and Order Declining to Adopt the Findings and Recommendations. (Req. for Jud. Not., ("RJN") Exs. A & B; ECF No. 27.)

Federal Rule of Evidence 201 permits the Court to take judicial notice at any time. A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources who accuracy reasonably cannot be questioned. Fed. R. Evid. 201(b). Courts may take judicial notice of facts related to the case before it. Amphibious Partners, LLC v. Redman, 534 F.3d 1357, 1361-1362 (10th Cir. 2008) (district court was entitled to take judicial notice of its memorandum of order and judgment from previous case involving same parties). This Court may judicially notice the records and filing of other court proceedings. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Bennett v. Medtronic, Inc., 285 F.3d 801, 802 n.2 (9th Cir. 2002). It is well established that a court may take judicial notice of its own files and records under Rule 201. See, e.g., Molus v. Swan, No. 05cv452-NMA (WMc), 2009 WL 160937, at *2 (S.D. Cal. Jan. 22, 2009) ("Courts also may take judicial notice of their own records," citing United States v. Author Services, 804 F.2d 1520, 1523 (9th Cir. 1986)); NovelPoster v. Javitch Canfield Group, No 13-CV-5186-WHO, 2014 WL 5594969, at *4, n.7 (N.D. Cal. Nov. 3, 2014) ("In conjunction with the motion, defendants requested judicial notice of various documents, including NovelPoster's ex parte application for a temporary restraining order in this case and this Court's subsequent order….Defendants' request for judicial notice of the TRO application and order is GRANTED").

Defendants' request for judicial notice is GRANTED, as the documents are matters of public record and appropriate for judicial notice.

**D.     Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need

exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones v. Bock, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino v. Baca, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Indeed, Plaintiff admits the CDCR grievance system was available. (Compl. at 6:8-12; 7:6-17, ECF No. 1.)

Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). The California Code of

Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue.  To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.   If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).

The administrative grievance process takes approximately six months or more to complete from the submission of the first grievance.  Cal. Code. Regs. tit. 15, § 3084.8(c).  The prison has 30 working days to provide a first level response to an inmate's appeal.  Id. at § 3084.8(c)(1).  The inmate then has thirty days to appeal to the next level, after which the prison has another 30 working days to provide a second level response.  Id. at §§ 3084.8(b)(3); 3084.8(c)(2).  The inmate then has 30 days to seek the third and final level of review.  Id. at § 3084.8(b)(3).  The third level has 60 working days to provide a response.  Id. at § 3084.8(c)(3).

### 1. Failure to Exhaust as to Claims Based on December 2018 Events

The majority of the conduct alleged against the Defendants occurred on December 20, 21 and 22, 2018. (ECF No. 1 at p. 6-9.)  Plaintiff alleges Defendant Fernandez was assigned Plaintiff's grievance in December 2018 to review, and Defendants Castro, Merida, and Cerda allegedly engaged in retaliatory conduct for this grievance on December 20, 2018. (Id. at 6-7.) Hicks and Villarrial allegedly engaged in conduct that violated Plaintiff's civil rights on "December 21 and 22, 2018." (Id. at 8.)

Plaintiff prepared and signed his complaint on December 21, 2018.  (Compl. at 10, ECF No. 1.)  Review of Plaintiff's complaint reflects that he did not exhaust his administrative remedies prior to initiating this action.  The conduct complained of supposedly occurred on or around December 20-22, 2018, *after* Plaintiff self-dated and initiated this action on December 21, 2018.  Even assuming Plaintiff submitted a grievance concerning the December events on December 21, 2018, given the time frames set forth section 3084.8 of CDCR's appeal regulations, it is impossible for Plaintiff to have proceeded through all three levels of review of the administrative grievance process because the institution has 30 days for a first and second level response and up to 60 days for a third level response.  Cal. Code Regs.

tit. 15, § 3084.8(c). Further, Plaintiff's claim that he feared retaliation is belied by the record. In order for Plaintiff to be excused based on a fear of retaliation, he must establish that (1) "he actually believed prison officials would retaliate against him if he filed a grievance'" and (2) "a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." Rodriguez v. County of Los Angeles, 891 F.3d 776, 792 (9th Cir. 2018) (citing McBride v. Lopez, 807 F.3d 982 (9th Cir. 2015)). Plaintiff contends that Defendant Castro threatened him with retaliation if he did not drop his inmate grievance. However, Plaintiff admits that did not and would not drop the inmate grievance (see ECF No. 1 at 7-8), and therefore it is clear Plaintiff was not deterred by the alleged threats. Further, Plaintiff submits that he did not even attempt to submit a grievance because he believed to do so would be futile based on his claim that Defendant Castro torn up a "form 22" months earlier in October. However, any previous form 22 has no relation to events that occurred in December 2018. Thus, Plaintiff has failed to submit evidence to support a finding that he "actually believed prison officials would retaliate against him if he filed [or attempted to exhaust] a grievance." McBride, 807 F.3d at 987. Consequently, Plaintiff has failed to demonstrate that any feared retaliation excused him from exhausting the administrative remedies. In addition, Plaintiff alleges some of the events occurred on "December 22, 2018" after he signed and then mailed his complaint to the Court. (ECF No. 1 at 8-9.) Accordingly, it is clear on the face of the complaint that Plaintiff has not exhausted the administrative remedies for the December 2018 allegations, and Defendants' motion to dismiss these claims should be granted.

### B. Failure to State a Cognizable Claim

Defendants Merida and Castro argue that Plaintiff has failed to plead sufficient facts to state a cognizable deliberate indifference claim as to the October 2018 events. Defendant Merida further argues that Plaintiff has not plead facts showing that Merida engaged in retaliation in October 2018. The Court will address each argument separately below.

///

///

        1.      <u>Retaliation Claim Against Defendant Merida</u>

As previously stated, Defendant Merida argues that Plaintiff has not plead sufficient facts to demonstrate that Merida engaged in retaliation in October 2018.

A failure to intervene claim is "analytically the same" as the underlying violation. <u>United States v. Koon</u>, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) (failure to intervene claim is "analytically the same" as underlying violation), rev'd on other grounds, 518 U.S. 81 (1996). Plaintiff must allege facts indicating that the defendant was aware that other defendants were violating Plaintiff's constitutional rights and had a realistic opportunity to intervene and prevent the violation. See <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1289-90 (9th Cir. 2000); <u>Ting v. United States</u>, 927 F.2d 1504, 1511-12 (9th Cir. 1991) (analyzing analogous <u>Bivens</u> claim).

Plaintiff contends the following with regard to the October 2018 retaliation by Defendants Merida and Castro:

> On about October 11, 2018, Plaintiff gave Defendant Castro a CDCR Form-22 in attempt to resolve a mail dispute, as legal mail Plaintiff had given to defendant two weeks or so prior, had not been delivered. Defendant Castro read the CDCR Form-22, refused to adhere [to] CDCR policy by issuing Plaintiff's receipt and/or response, then went into the C/O's office to discard the Form-22 in the trash, all while Defendant [Merida] stood by laughing.
>
> When Plaintiff informed Defendants Castro and [Merida] of intent to file a 602 grievance Defendant Castro threatened retaliation by saying "your getting a 115 for this," which caused Plaintiff immediate anxiety because a 115 is Rules Violation Report (RVR). Flux with anxiety, Plaintiff reported to psychiatric technician (PT) Uriate urge to hurt self or others based on chilling effect imposed by Defendant Castro. PT Uriate alerted defendant to plaintiff report sometime later however, in between such time Plaintiff had succumb to distressed urge and cut left writs while in cell quarters, relieving anxiety brought on by defendant issuance of an RVR solely for plaintiff engaged in a protected conduct.

(Compl. at 4:11-27; 5:1-25.)

Here, Plaintiff contends that Defendant Merida was present when Plaintiff informed both Merida and Castro of his intent to file a grievance and Defendant Castro threatened issuance of a Rules Violation Report in response. Defendant Merida's liability is based on his/her failure to intervene in the alleged retaliatory conduct by Defendant Castro. Accordingly, Defendants' motion to dismiss this claim should be denied.

9

2. <u>Deliberate Indifference Claim Against Defendants Castro and Merida</u>

Defendants Castro and Merida argue that Plaintiff has not plead facts sufficient to demonstrate that they engaged in deliberate indifference in October 2018.

In the operative complaint, Plaintiff states that he is a participant in the mental health services delivery system at an enhanced outpatient level [EOP] for treatment as a "cutter." (Compl. at 4, ECF No. 1.) "Plaintiff is recognized as, and is being treated in EOP, in part, for what is commonly referred to as a cutter." (Compl. at 4.) Plaintiff also indicates that he is prescribed psychotropic medications two times a day, and on as "needed" basis up to every four to six hours. Based on a liberal construction of Plaintiff's allegations in the light most favorable to him, the Court finds that Plaintiff has stated a plausible claim for deliberate indifference against Defendants Castro and Merida as it is plausible to believe that they were aware of Plaintiff's cutting disorder and acted with deliberate indifference to his medical condition.

3. <u>Qualified Immunity on Retaliation Claim</u>

Defendants also claim that they are entitled to qualified immunity on Plaintiff's retaliation claim.

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Mueller v. Auker</u>, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001); <u>Mueller</u>, 576 F.3d at 993.

While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

Accepting Plaintiff's allegations as true, as this Court must, it is not clear whether there was a legitimate reason for the search of Plaintiff's medicine bag. Without further factual development of Plaintiff's claim, the Court cannot, at this juncture, adequately define the right to determine qualified immunity. Consequently, whether the evidence will support Plaintiff's assertions and whether Defendant may be entitled to qualified immunity are questions that cannot be resolved at this juncture. Although qualified immunity from suit should be resolved at the earliest stage possible, the Supreme Court has recognized that resolving qualified immunity based solely on the pleadings without the benefit of factual development of the record may be difficult. Pearson v. Callahan, 555 U.S. 223, 238-39 (2009); see also Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999) (further factual development outside the complaint may be necessary to establish affirmative defense of qualified immunity); Moss v. U.S. Secret Service, 572 F.3d 962, 974-75 (9th Cir. 2009) (where extra-record evidence is proffered or required to determine the facts at hand, qualified immunity must be asserted in a summary judgment motion). Accordingly, Defendant's motion to dismiss based on qualified immunity should be denied.

### III.
### RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss be granted in part and denied in part;
2. Defendants' motion to dismiss Plaintiff's December 2018 claims for failure to exhaust the administrative remedies be granted;
3. Defendants' motion to dismiss Plaintiff's deliberate indifference claims against Castro and Merida for failure to state a cognizable claim for relief be denied; and
4. Defendants' motion to dismiss Plaintiff's retaliation claim based on qualified immunity be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 13, 2020**

UNITED STATES MAGISTRATE JUDGE